IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 22, 2003

## CAROLYN DIANE BROWN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 38264   Richard L. Baumgartner, Judge**

**No. E2002-02760-CCA-R3-PC**
**November 24, 2003**

The petitioner, Carolyn Diane Brown, appeals the trial court's denial of post-conviction relief. In addition to a challenge of the sufficiency of the convicting evidence, the petitioner alleges that she was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JOSEPH M. TIPTON, J., not participating.

Martha L. Cochran, for the appellant, Carolyn Diane Brown.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Fred Bright, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On February 3, 1988, the petitioner was convicted of first degree murder and sentenced to life imprisonment. On direct appeal, Judge Lyle Reid, writing on behalf of our court, summarized the relevant facts as follows:

The offense was committed in the residence occupied until several days prior thereto by [the petitioner] and Gaines, who had lived together for several years except for intermittent separations and who were the parents of a four-year-old child. Because of a domestic quarrel, [the petitioner] left the residence with all her personal belongings, about a week before the shooting which occurred near noon on Saturday.

Late Friday night at a hotel bar Gaines encountered the victim, whom he had known as a child when they were neighbors for several years. The victim told Gaines she had no place to spend the night and asked if she could go home with him.

Gaines, who described their relationship as "like brother and sister," assented. They watched television, had some drinks and went to bed about 5:00 A.M., Gaines in his bedroom and the victim on a couch in the living room in Gaines' t-shirt covered with his coat.

Early Saturday morning Gaines was awakened by Appellant knocking on the door. When he opened the door he told [the petitioner] there was a woman in the house and explained that she was a friend, "like a sister." [The petitioner] walked to the couch where the victim still was asleep, removed the coat and observed that she was naked except for the short shirt. [The petitioner] expressed outrage, insisted that the victim leave immediately and tried unsuccessfully to awaken her. [The petitioner] and Gaines, scuffling and quarreling about the victim's presence, locked themselves in the bedroom and after consummating two acts of sexual intercourse slept together until late in the morning, when the quarrel continued with the victim participating by calling [the petitioner] bad names to Gaines' amusement.

Gaines and [the petitioner] drove to a market to buy food for breakfast. While Gaines was inside the market [the petitioner] placed inside her purse a pistol which Gaines had left in the vehicle. When they returned to the residence, Gaines prepared the food and he and the victim ate but [the petitioner] sat in the living room crying and shaking, with the pistol openly displayed nearby. Gaines and the victim continued to make sport of [the petitioner's] emotional reaction to the victim's presence throughout the meal and afterwards as Gaines put away the dishes and the victim returned to the living room.

[The petitioner] picked up the pistol and fired two shots, one through the victim's heart and the other within about a foot of Gaines' head. She continued to point the weapon at Gaines for several minutes as he tried to hide behind the refrigerator. She then unloaded the weapon.

There were no significant difference[s] between the account of the killing given by Gaines at the trial and by [the petitioner] in her statement to the police. She stated she intended to shoot both Gaines and the victim. She also stated she was sorry "I did it" but she was not sorry "she's gone."

State v. Carolyn Diane Brown, No. 1195 (Tenn. Crim. App., at Knoxville, Jan. 19, 1989).

In the direct appeal, the primary issue was whether the evidence was sufficient to support murder in the first degree. The petitioner argued that the proof offered at trial established only voluntary manslaughter, i.e., a killing committed upon a sudden heat or passion. Because, however, the petitioner had discovered the presence of the victim at her residence several hours before the shooting and there was little or no additional provocation, this court found the evidence to be

sufficient. Id. After our affirmance of the conviction, application for permission to appeal to the supreme court was denied on May 8, 1989.

In 1989, the petitioner filed a pro se petition for post-conviction relief. Counsel was appointed and the petition was amended. In 1994, there were evidentiary hearings as to the claim of ineffective assistance of counsel. One complaint was that the diminished capacity of the petitioner was inadequately developed by trial counsel. See State v. Phillips, 883 S.W.2d 138 (Tenn. Crim. App. 1994). In 1997, there was a hearing on the claim of insufficient evidence and the accuracy of the premeditation and deliberation instructions. An additional issue pertained to the propriety of sequential consideration by the jury of the first degree murder charge and the lesser offenses.

At the initial evidentiary hearing in 1994, the petitioner testified that she had been psychologically tested and diagnosed with borderline intelligence and a dependent personality. She recalled that trial counsel had visited her one or more times in jail and approximately five times in his office in advance of the trial. It was her assessment that she had not adequately discussed her case with trial counsel and, because it was her first time in court, she felt unprepared for trial. The petitioner complained that she did not understand the distinctions between first degree murder, second degree murder, and voluntary manslaughter. It was her further belief that an emotional outburst by a member of the victim's family during trial counsel's final argument had an adverse effect on the trial. On cross-examination, the petitioner acknowledged that her trial counsel had been successful in gaining a reduction in bail from $50,000.00 to $5,000.00 and, at least temporarily, persuading an assistant district attorney to reduce the charge to voluntary manslaughter. She also remarked that trial counsel was the "first person that [she had] seen" after her arrest. The petitioner recalled that after her indictment, trial counsel had attempted to negotiate a plea agreement; at one point, she had authorized him to offer a plea of guilt to second degree murder and acknowledged at the hearing that the state had declined the proposal because of opposition by the victim's family. The petitioner also remembered that the trial of her case had been postponed by trial counsel on more than one occasion so that he could gain a sufficient amount of time for preparation. Upon being read portions of the transcript of the trial, the petitioner conceded that the victim's brother, after the audible emotional outburst in the presence of the jury, was ordered by the trial judge to leave the courtroom. The petitioner also confirmed that the trial judge had provided curative instructions and that both the trial judge and the assistant district attorney had apologized to the jury.

Trial counsel, who had practiced criminal defense law almost exclusively, testified that he met with the petitioner while she was incarcerated on either four or five occasions and, after her pretrial release, met with her in his office between eight and eleven times. He described his meetings as lengthy "due to the inability of total understanding that [the petitioner] had." Trial counsel recalled arranging treatment by a clinical psychologist, Dr. William H. Daniel, who subsequently testified at trial that, in his opinion, the petitioner intended no harm to the victim. By agreeing to a waiver of the preliminary hearing, trial counsel explained that he was able to arrange a reduction of bond and a pretrial release without any cost to the petitioner. He stated that while the petitioner admitted shooting the victim, the defense theory was that her mental state precluded a first degree murder conviction and that the petitioner's state of emotion was such as to warrant nothing more than

a conviction for voluntary manslaughter. Trial counsel confirmed that the state was unwilling to accept a guilty plea to anything less than first degree murder. It was his belief that the state had afforded full discovery, that he had adequately investigated the crime scene, and that he had conducted a number of interviews with the petitioner's boyfriend, James Gaines, the primary state witness. He specifically recalled having prepared the petitioner for the state's cross-examination during their last three or four meetings. Trial counsel stated that he had inspected the pistol used in the shooting and had observed each of the two spent cartridges. He also recalled preparing a black and white diagram of the crime scene and drafting special requests for instructions which were accepted by the trial court and provided to the jury. Trial counsel recalled that when the victim's brother interrupted his closing argument, he considered asking for a mistrial but, upon observing the faces of several jurors expressing "disgust about the outburst, . . . thought perhaps as a tactical decision that . . . if [he] went on with [his] arguments then that jury . . . may possibly [be] more lenient." Trial counsel described the petitioner's demeanor as "bordering on hysterical" during the course of the trial, crying "from the beginning." When she became particularly emotional at one point in the trial, trial counsel had asked for a recess and the trial court granted a continuance until the following day.

On cross-examination, trial counsel acknowledged that although he had represented others charged with first degree murder, those cases had resulted in plea agreements and this was his first trial for such a charge. Trial counsel noted that he had consulted with several other criminal defense attorneys in the Knoxville area, receiving assistance in selecting an expert and in conducting his legal research. He also acknowledged that he had attempted to gain suppression of the statement the petitioner had made to police, which he described as "very damaging," but was unsuccessful.

At the conclusion of the 1994 hearing, the post-conviction court ruled from the bench that the petitioner had not been deprived of the effective assistance of counsel. The court concluded that the emotional outburst by members of the victim's family prior to deliberations by the jury tended to benefit rather than prejudice the petitioner. The post-conviction court found that trial counsel was fully and completely prepared, had consulted with an expert in psychology, and had otherwise performed capably during the course of the trial.

In 2002, the post-conviction court entered a memorandum opinion and order denying relief on the other grounds. The court concluded that State v. Brown, 836 S.W.2d 530 (Tenn. 1992), a decision rendered by our supreme court some four years after the trial in this case, had not created a new constitutional rule with retroactive application and that a new trial was not warranted on that basis. In that case, the high court invalidated the jury instruction stating that premeditation and deliberation could be formed in an instant. In support of that determination, the post-conviction court cited Miller v. State, 54 S.W.3d 743 (2001), wherein our supreme court confirmed several opinions from this court that Brown had not announced a new state constitutional rule, was not retroactive, and could not be applied to preserve a challenge to the jury instructions that had been waived for the failure to object during trial and on appeal. The post-conviction court also ruled that the claim regarding the sufficiency of the evidence had been previously determined on the direct appeal. As to the final issue, it concluded that any argument by the petitioner that the instructions

-4-

at trial were erroneous because the jury was to sequentially consider first degree murder, then second degree murder, then voluntary manslaughter, did not present a constitutional basis for relief and did not conflict with law.

I

In this appeal, the petitioner first argues that she was denied the effective assistance of counsel. She specifically complains that trial counsel failed to fully develop the diminished capacity issue, failed to fully prepare for trial, failed to move for a mistrial, and, on direct appeal, failed to allege as a ground for relief the denial of the motion to suppress.

Initially, under the version of the Post-Conviction Procedure Act in effect at the time of the filing of this petition, the petitioner bears the burden of proving the allegations in the petition by a preponderance of the evidence. See Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given

-5-

no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner has criticized trial counsel because, in her words, he failed to fully develop the issue of diminished capacity in relation to the premeditation, deliberation, and heat of passion issues. She claims that it was not enough for trial counsel to merely establish her borderline intelligence, dependent personality, and lack of criminal intent through Dr. Daniel, the psychologist.

In our view, the petitioner has failed to suggest precisely how trial counsel could have further developed Dr. Daniel's testimony. Among other things, Dr. Daniel testified at trial that because petitioner depended upon her boyfriend, Gaines, completely, she felt like "her whole world" was disintegrating or falling apart in front of her. Because Dr. Daniel was not called as a witness at the evidentiary hearing, this court is left to speculate on how trial counsel might have more effectively questioned Dr. Daniel. In consequence, it is our view that the petitioner has failed to meet her burden of proof on this particular claim.

The petitioner has also failed to establish that trial counsel was not competent or that his trial preparation was insufficient. A mere allegation that trial counsel had practiced law for only four years at the time of the trial and had not previously represented a defendant in the trial of a first degree murder case is not enough. The burden is on the petitioner to actually show how further preparation might have produced a different result or how lack of prior experience hampered the defense. In this instance, no new witnesses were presented at the evidentiary hearing and nothing in the record suggests that trial counsel failed to invest an adequate amount of time in his preparations or otherwise failed in his responsibilities as an advocate during the course of the trial.

Further, trial counsel's decision not to request a mistrial qualified as a tactical decision. At the evidentiary hearing, trial counsel explained that he observed the jurors' reaction to the outburst of the victim's brother during the final argument. It was his assessment that the jurors had collectively disapproved of the comments made in the courtroom which, in his opinion, was the basis of a hope for leniency in the verdict. Trial counsel's testimony was fully accredited by the post-conviction court and the evidence offered by the petitioner did not preponderate against that finding. Moreover, trial counsel presented the mistrial issue on direct appeal. Although the failure of trial counsel to request a mistrial at the time of the outburst resulted in a procedural waiver of the issue as a potential ground for relief, this court nevertheless ruled on the merits: "Considering the whole record, the spectator's acts, more probably than not, did not affect the verdict of the jury." Carolyn Diane Brown, No. 1195.

Finally, the failure to appeal the denial of the motion to suppress is not a basis for relief. At the suppression hearing, the trial court accredited the testimony of the officer who took the petitioner's statement, who stated that he had advised the petitioner of her constitutional rights and believed that she had fully comprehended the content of the waiver form before affixing her signature. While the petitioner claimed to have been coerced into providing the statement based upon promises of help, she was unable to produce any proof at the evidentiary hearing which

corroborated that claim. Under these circumstances, it is unlikely that an appeal of the denial of the motion to suppress would have been successful.

## II

The petitioner also claims that the evidence of premeditation and deliberation was insufficient to support the verdict. In support of that argument, the petitioner cites State v. Brown, 836 S.W.2d 530 (Tenn. 1992), where our supreme court ruled that the instruction provided in this case, that premeditation and deliberation could be formed in an instant, was erroneous. While the petitioner acknowledges that Brown has not been given retroactive application and that her trial took place well before the supreme court decision, she argues that the state failed to prove either deliberation or an intention to kill.

In the trial of this case, the trial court provided the same instructions that were later deemed erroneous in Brown:

> Premeditation means that the intent to kill must have been formed prior to the killing. Such intent or design to kill may be concerned and deliberately formed in an instant. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. It is sufficient that it preceded the act, however short the interval.

This claim for relief must fail for two reasons. First, this claim was raised and rejected on direct appeal. Under the Post-Conviction Procedure Act, a claim which has been previously determined cannot be a basis for post-conviction relief. See Tenn. Code Ann. § 40-30-112(a) (1982) ("A ground for relief is 'previously determined' if a court of competent jurisdiction has ruled on the merits after a full and fair hearing."). Second, even if Brown were applied retroactively, the elements of deliberation and premeditation were adequately established by the significant period of time that elapsed between the discovery of the victim at the residence and the fatal shots. Although the petitioner clearly reacted to the circumstances in an emotional way, she afterward had sexual relations with her boyfriend, slept, drove to the market, took possession of a weapon, and stated an intention to shoot the victim well before the commission of the act. Under these circumstances, the evidence was sufficient to support a finding that the petitioner had the opportunity to consider her alternatives before committing the crime.

## III

As her final issue, the petitioner argues that the instructions to the jury precluded consideration of lesser included offenses until the jury had acquitted the petitioner on the greater offenses. In making this argument, the petitioner concedes that the trial court provided a charge in compliance with the Tennessee Pattern Jury Instructions. Nevertheless, she argues that the jury should have been instructed that if it could not agree on the applicability of the greater offense, it could have also considered second degree murder or voluntary manslaughter or any other lesser crime.

This claim does not warrant relief. Initially, under the Post-Conviction Procedure Act, a ground for relief is forever waived if "the petitioner knowingly and understandingly failed to present [the issue] for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-112(b)(1) (1982). "There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived." Tenn. Code Ann. § 40-30-112(b)(2) (1982). As indicated in House v. State, a waiver is determined upon an objective basis "under which a petitioner is bound by the action or inaction of his attorney." 911 S.W.2d 705, 714 (Tenn. 1996). Additionally, this court has expressly approved of similar jury instructions. See State v. Rutherford, 876 S.W.2d 118, 119 (Tenn. Crim. App. 1993). In Rutherford, the trial court instructed the jury that it could only consider the lesser included offenses after finding that the defendant is not guilty of the greater offense. Id. This court found no error in the instructions. Id. at 120. The petitioner is not, therefore, entitled to relief.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE